## BARNUM v. BOBB et al., Appellants.

**Equity**: INJUNCTION: MORTGAGE: MARRIED WOMAN. Plaintiff being the owner of certain real estate which was subject to a mortgage, sold the same, the purchasers assuming the mortgage, paying partly in cash and partly in a note which was paid at maturity, and giving besides, their note for $2,600, secured by a deed of trust on the land. The purchasers failing to pay off the mortgage debt, plaintiff was compelled to pay part of it. Subsequently defendants, who were husband and wife, being desirous of becoming the owners of the mortgage, but knowing that the holder, through friendship for the plaintiff, would not sell it without the plaintiff's consent, sought plaintiff's consent and assistance in effecting the purchase. Plaintiff would consent only on condition that defendants should refund to him what he had paid on the mortgage, should indorse the $2,600 note which was still unpaid, and should waive the priority of the mortgage and hold it secondary to the deed of trust. In the absence of the wife, the husband agreed to these terms, paid the plaintiff the whole amount of the mortgage and took possession of it, and also took the $2,600 note to his wife for her indorsement. She refused, and the note was returned to the plaintiff. Defendants sub-

sequently caused a sale to be made under the mortgage, at which the wife became the purchaser. This action being brought to enjoin the delivery of a deed to her, and for other relief; *Held*, that plaintiff was entitled to the injunction and to a decree declaring the mortgage secondary to the deed of trust. The fact that the wife did not consent to the arrangement, as made by her husband, was immaterial, since it was by virtue of it that they had obtained possession of the mortgage, and it would operate a fraud on the plaintiff not to enforce it against her. For the same reason it was not material that she had not separate estate.

*Appeal from Montgomery Circuit Court.*—HON. G. PORTER, Judge.

This was a suit brought by Robert C. Barnum, as guardian and curator of his minor children, Fannie C. and Lucy D. Barnum, against Charles Bobb and Martha E. Bobb, his wife, and A. H. White, the object of which was to enjoin White from delivering to Mrs. Bobb a deed for certain lands in the petition mentioned, sold by him under a deed of trust, and to have a certain note for $2,600, secured by a second deed of trust, decreed to be a first lien upon said lands.

The bill charged in substance, that in the month of October, 1868, the said minors were the owners of certain real estate, (describing it,) containing in all about 800 acres; that all of said land was held by them under and subject to a deed of trust, dated June 5th, 1862, made by Robert C. Barnum and wife, and Theron Barnum and wife to James Merry, trustee for Mrs. C. M. Merry, to secure the payment of a principal note of $5,000, due in three years from date, and certain interest notes signed by said Robert C. and indorsed by Theron Barnum; that all said interest notes and all interest on said $5,000 was paid up to about November 1st, 1868, when there remained due and unpaid only the said $5,000 note; that on November 30th, 1868, the plaintiff, Robert C. Barnum, in his said capacity as curator of said minors, duly authorized thereto by the proper court, sold and conveyed by deed executed

by himself and Theron Barnum, 560 acres of said land, (describing it,) for the sum of $11,200, to George L. Bobb and Frank R. McGinness, son and son-in-law of defendants Charles and Martha' E. Bobb; that said land was to be paid for by said George L. Bobb and McGinness by $600 in cash, their note for $3,000, payable in eighteen months after date, indorsed by defendants, Charles and Martha E. Bobb, their note for $2,600, payable fifty-four months after date, both of said notes to be secured by their deed of trust upon the land purchased, and they were also to pay and take up the note for $5,000 due Mrs. Merry; that the said McGinness and George L. Bobb paid the $600 in cash, gave their note for $3,000, indorsed as agreed, (which was afterwards paid,) and also gave their note for $2,600, and secured the said two notes by deed of trust upon said land; that the said note for $2,600 was never paid, nor was any of the interest thereon.    It is further charged that said McGinness and George L. Bobb did not pay the $5,000 note due Mrs. Merry as they agreed to, but that said Merry called upon plaintiff, and he was compelled to, and did, on the 26th day of June, 1869, pay, as curator of said minors, to the said Merry, $2,500 on said note, and all interest up to that date, which was indorsed on the back of said note; that the payment so made, was made out of the funds of said minors, and was so paid because the title of said minors was subject to said deed of trust; that in the summer of 1869, defendants, Charles and Martha E. Bobb, called upon the plaintiff, Robert C. Barnum, and wanted to purchase the $5,000 Merry note, knowing that Mrs. Merry was a friend of plaintiff, and would not sell said note without the knowledge and consent of plaintiff; that plaintiff refused to consent to the sale of said Merry note to said defendant, except upon the condition that they would pay down in cash at least $5,000, and also upon the further condition, that said Charles and Martha E. Bobb should indorse with their names the said note of $2,600, and should also stipulate and agree that the deed of trust given by

McGinness and George L. Bobb to secure the payment of said $2,600 note, should take precedence of and be considered and allowed as prior to the deed of trust, securing the Merry note, when said note and deed of trust should come into the hands of defendants; that these terms were consented to by defendants, and upon these and none other the plaintiff consented that they might have the Merry note; that in pursuance of this agreement, the plaintiff wrote to Mrs. Merry, in Iowa, for the note, but before the transaction was completed, he was compelled to leave the city, and placed the matter in the hands of his attorney, Musser, with instructions to draw up the necessary papers; that defendant, Charles Bobb, in company with Theron Barnum, on the 26th day of August, 1868, went to said Musser's office and there talked over the terms of the purchase, and thereupon, the said Musser drew up a paper specifying and setting forth the substance of said agreement, which paper was then signed by the parties present and attached to the Merry note, as showing the conditions of the transfer of said note to defendants, and was attached to said note when the same was delivered to said Charles Bobb, and that said Charles Bobb, also, then and there, promised that if the said $2,600 note was given to him he would indorse it and have his wife indorse it; that said Charles Bobb paid the $5,000, and the said Merry note and deed of trust, with said paper attached, were delivered to him; that defendant, Charles Bobb, returned the $2,600 note not indorsed by himself or wife, and they have refused to pay or indorse the same.

It is further charged, that the defendants obtained possession of the Merry note and deed of trust under the false and fraudulent pretense that they *would indorse* said $2,600 note, and sign and keep the said paper and agreement attached to it; that they did this to cheat plaintiff by secretly foreclosing the Merry deed of trust and thereby rendering the deed of trust given by George L. Bobb and McGinness to secure the $2,600 note of no effect or value,

and thus to cheat plaintiffs out of their just rights and securities; that for two years prior to the filing of the petition, the plaintiff had lived in New York, and that defendants threatening to foreclose the $5,000 deed of trust, he had placed the matter in the hands of Mr. O. S. Baker, and that between the 18th day of May, 1873, and the 15th day of June, 1873, said Baker was absent from the State; that during his absence the defendants had defendant White appointed to execute said deed of trust, and without plaintiff's knowledge or consent, had said property advertised and sold under said Merry deed of trust about the 26th day of June, 1873, as provided therein, and that at said sale the defendant, Martha E. Bobb, purchased the same, and was demanding a deed from defendant, White. Defendants answered. There was a trial and a decree for the plaintiff, from which defendants appealed.

*Chandler & Young* for appellants.

*D. T. Jewett* for respondent.

NAPTON, J.—The only question in this case is, whether the decree of the circuit court was authorized by the facts as found by the judge. It is obvious that the court found the facts to be substantially as stated in the petition, and as such a conclusion is supported by the testimony of five witnesses, and scarcely contradicted by the defendants, we may assume them to have been correctly stated.

It appears, then, that the children of Robert C. Barnum were the owners of a farm in Montgomery county subject to a mortgage of $5,000 in favor of Mrs. Merry, and by authority of the circuit court of said county, this land was sold to a son and son-in-law of the defendants for $11,200. The terms of the sale were that the purchasers should pay down $600 in cash, should take up the Merry note for $5,000, should give their note for $3,000, indorsed by the defendants, Bobb and his wife, and another note for $2,600 secured by a deed of trust on the land. The $600

cash payment was made, the note for $3,000, indorsed by defendants, was also made and paid at maturity, and the note for $2,600 was made, but the $5,000 note to Mrs. Merry was allowed to go unpaid, both principal and interest, and so, also, the note for $2,600.

About a year after this transaction, in June, 1869, Mrs. Merry called upon the plaintiff, or his father, Theron Barnum, to pay $2,500 on the note to her, and said Barnum paid it by discounting the $3,000 note which belonged to the minors. In the summer of the same year (1869) the defendants wished to get possession of the Merry note and deed of trust, and according to the testimony of Mr. Musser, who was acting at that time as plaintiff's attorney, the following agreement was concluded: " The agreement was, that defendants, Bobb, were to pay $5,000 in money and accrued interest and indorse the $2,600 note, and hold the $5,000 deed of trust secondary to the $2,600 note, otherwise that it should not be negotiated or foreclosed until the $2,600 note was paid or satisfaction secured. Witness delivered the $2,600 note to Charles Bobb, and he said he would take it to his wife and have her indorse it. Upon Bobb's giving $5,000, I gave him the $5,000 note, with the paper or memorandum embodying the substance of the agreement. Bobb returned the $2,600 note, saying his wife refused to indorse it. The defendants, Bobb, wanted to purchase the $5,000 note and not pay it, in order to save themselves for money advanced for George L. Bobb and McGinness. I suppose Robert C. Barnum owed $5,000 and interest on this note. Theron Barnum held the note and, I suppose, owned it. Robert C. Barnum was willing to let defendants have the $5,000 note if they would indorse the $2,600 note."

This statement of Mr. Musser is corroborated by Mr. Ellerbe, who was present in the office when the agreement was made. The same statement, in substance, is made by Theron Barnum and Freeman Barnum and by the plaintiff. These statements were denied by the defendants. Subse-

·quently the defendant, not being able to procure a sale of the land under the deed of trust by the original trustee, had one White appointed trustee, and a sale made at which Mrs. Bobb became the purchaser. It was for the purpose of preventing White from making a deed and declaring this sale void that this suit was instituted. The court rendered a decree for the plaintiff, adjudging the sale made by defendant, White, to be void, enjoining him from making or delivering a deed to defendant, Martha E. Bobb, restraining defendant, Bobb, from advertising or selling under said deed of trust, and declaring the deed of trust securing the $2,600 note to be a first lien on said property.

We do not very well see how the circuit court could have reached any other conclusion in regard to the facts than the one adopted. The fact that the terms of the transfer of the $5,000 note and deed of trust were reduced to writing by Mr. Musser, and the paper appended by him to the $5,000 note and deed of trust, and handed over to defendants, seems conclusive that Mr. Musser's recollection of the details could not have been much at fault, or the defendant would have produced this memorandum. They had it in their power to show exactly what the agreement, or proposed agreement of the plaintiff was. It may be that Mrs. Bobb, as she states, was under the impression that she never assented to an indorsement of the $2,600 note. It seems, however, reasonably certain that the plaintiff did so understand it, and never consented to part with the note and deed of trust for $5,000 unless upon having the $2,600 note secured or paid. ·It will be seen then that the object of the petition is not to enforce the specific performance of a contract, either against Mrs. Bobb or any one else. It is not material that Mrs. Bobb misunderstood the proposition of the plaintiff, or his agent, if in fact, as she states in her testimony, she did not agree to indorse the $2,600 note. It is certain that the possession ·of the $5,000 note and deed of trust was obtained by permitting the plaintiff's agent to feel assured that such prom-

40—68

ises were made and would be complied with. The only object of the petition and the decree which was made in conformity to its prayer, was to prevent the defendants from making use of the oldest lien upon the land, so as to destroy or very much impair the value of the note for $2,600 for a portion of the purchase money, contrary to what must be conceded as the intention of the plaintiff, and the only ground upon which he consented to the transfer.

The evidence on the side of plaintiff is overwhelming, and is supported by witnesses who had no motives to misrepresent. It is objected to the decree that it is not proved that Mrs. Bobb had a separate estate, but the whole history of the transaction can only be accounted for on the hypothesis that she had, and whether she had a separate estate or not, her coverture will not be allowed to operate as a sword instead of a shield, and enable her to perpetrate what, at all events and in any view of the testimony, operated as a fraud upon the plaintiff. *Pratt v. Eaton*, 65 Mo. 157. The judgment of the circuit court will be affirmed. all concur.                                          AFFIRMED.